**WIRE SERVICE GUILD, LOCAL 222, the NEWSPAPER GUILD, AFL–CIO, Plaintiff-Appellee,**

v.

**UNITED PRESS INTERNATIONAL, INC., Defendant-Appellant.**

**No. 1201, Docket 80–7268.**

United States Court of Appeals, Second Circuit.

Argued May 15, 1980.

Decided June 18, 1980.

---

Philip D. Tobin, New York City (Cohn, Glickstein, Lurie, Ostrin, Lubell & Lubell, New York City, of counsel), for plaintiff-appellee.

John D. Canoni, New York City (Townley & Updike, New York City, of counsel), for defendant-appellant.

Before MULLIGAN, Circuit Judge and ZAMPANO * and BRIEANT,** District Judges.

MULLIGAN, Circuit Judge:

United Press International, Inc. ("UPI") and the Wire Services Guild, Local 222 ("the Guild") were parties to a Collective Bargaining Agreement ("the Agreement") covering the period relevant to this appeal. The Agreement sets forth the wages, hours and other working conditions of UPI employees represented by the Guild including staff photographers. In January 1977, John Barr who was then the "junior" staff photographer in UPI's Los Angeles office was advised that he faced termination of his employment because UPI had decided to reduce the staff in that office. Barr was offered a transfer to Detroit which he refused to accept. On February 12, 1977 Barr was dismissed. The Guild prosecuted a grievance on Barr's behalf but it was not settled through contractual grievance procedures. The Guild and UPI thereupon submitted the dispute to arbitration before Adolph M. Koven who was mutually selected by the parties.

UPI took the position that the dispute was not arbitrable under Article XIV, section 4 of the Agreement which provides in pertinent part that "nothing herein shall obligate the Employer to arbitrate any is-

---

* United States District Judge, for the District of Connecticut, sitting by designation.

** United States District Judge, for the Southern District of New York, sitting by designation.

sue bearing on the Employer's sole responsibility to determine the size and composition of its staff." Article XIII provides that "[t]here shall be no dismissals except for just and sufficient cause." It further states that "[r]eduction in staff shall constitute just and sufficient cause." Moreover, Article XXV provides that "[t]he employer shall determine the size and composition of its staff."

The Union argued that Barr's dismissal was not due to a reduction in staff because after he was terminated, UPI assigned the work performed by Barr to an exempt management employee out of the bargaining unit. The Union maintained that while the Agreement did not define "reduction in staff," use of that phrase normally connotes that there is less work and therefore fewer employees needed. Here there was, according to the Union, no diminution in the amount of work, but rather the unjustified substitution of an exempt employee to perform the work of a bargaining unit employee.

After hearings on some eight days in June, September, October and November of 1978 at which both parties were represented by counsel, and after both had submitted post-hearing briefs, the arbitrator issued an opinion and award on August 15, 1979, reinstating Barr to his position as of February 12, 1977 with back pay less outside earnings during that period. The arbitrator concluded that there was no just and sufficient cause for dismissal, and held that UPI violated the Agreement by assigning to an exempt employee work which had previously been performed by Barr. This was in the arbitrator's view an improper "reduction in staff" not contemplated by the agreement.

On September 10, 1979 the Guild commenced an action in the United States District Court for the Southern District of New York seeking confirmation and enforcement of the arbitration award. UPI answered and interposed affirmative defenses. The Guild then moved for summary judgment on November 30, 1979 and Judge Whitman Knapp heard oral argument on the motion on February 8, 1980.

He issued a memorandum and order enforcing the award on February 11, 1980. Final judgment for the Guild was entered on March 17, 1980.

This appeal followed.

I

UPI argues that the district court failed to fulfill its obligation to decide independently whether the dispute was arbitrable under the Agreement. That this obligation exists is undisputed. *Gangemi v. General Electric Co.*, 532 F.2d 861, 865 (2d Cir. 1976); *Rosenthal v. Emanuel, Deetjen & Co.*, 516 F.2d 325 (2d Cir. 1975). UPI argues that Judge Knapp misunderstood his responsibility and confined his analysis to a determination of whether the dispute was correctly decided on the merits. We cannot agree.

The Court explicitly recognized the arbitrability issue in its opinion below.

"On oral argument this case seemed to present a delicate question as to the relative functions of the court and the arbitrator, and as to whether the issue presented was arbitrable."

While the court did agree with the arbitrator that Barr was improperly dismissed, the opinion further stated that "[t]he proviso of Article XIV, section 4 of the Agreement has no possible relevance. By no stretch of the imagination can this provision be read as modifying the unambiguous language of Article XIII, section 2."

Since Article XIV, section 4 is precisely the section relied upon by UPI to support its position of nonarbitrability and since that section deals solely with arbitration, it cannot reasonably be argued that the court overlooked the issue of its applicability. It would have been more helpful had the court given some greater explication of its views on the issue, but UPI's disagreement with the court's conclusion on the merits and its dissatisfaction with the rather summary treatment accorded its nonarbitrability argument do not persuade us that the issue of arbitrability was not independently addressed.

The point is not ultimately that significant since both parties now agree that the question of arbitrability is one of contract interpretation which this court can itself determine without a remand. *Mobil Oil Corp. v. Local 8–766, Oil, Chemical & Atomic Workers Int'l Union*, 600 F.2d 322, 325–26 (1st Cir. 1979); *Necchi v. Necchi Sewing Machine Sales Corp.*, 348 F.2d 693, 697 (2d Cir. 1965), cert. denied, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966). We conclude that the court below did independently address the arbitrability issue and that, in any event, the dismissal of Barr was an arbitrable dispute.

## II

■ We commence with the observation that federal labor policy favors "arbitration as the means of resolving disputes over the meaning and effect of collective bargaining agreements." *CBS Inc. v. International Photographers Of the Motion Picture Industries*, 603 F.2d 1061, 1062–63 (2d Cir. 1979), quoting *Nolde Brothers, Inc. v. Confectionary Workers Union Local 358*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). Moreover, "doubts as to arbitrability should be 'resolved in favor of coverage,' . . . language excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear' and . . . arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. General Electric Co.*, 406 F.2d 1046, 1048 (2d Cir. 1969).

■ We are dealing here with a broadly phrased arbitration clause which provides that "any grievance as to the interpretation or application of this Agreement . . .

shall be submitted to arbitration, provided, however, that nothing herein shall obligate the Employer to arbitrate any issue bearing on the Employer's sole responsibility to determine the size and composition of its staff." (Art. XIV, § 4). Were this the only relevant language in the agreement, the position of UPI that it had determined the size (four photographers rather than five) and the composition (two management and four photographers rather than one and five respectively) of its staff and that this decision was unreviewable in arbitration, would indeed be persuasive. However, the decision to change the composition of its staff was not simply an academic or economic exercise—it involved the dismissal of Barr who was unwilling to go to the Detroit office. The dismissal triggered Article XIII, section 2 which provides that "[t]here shall be no dismissals except for just and sufficient cause. Reduction in staff shall constitute just and sufficient cause." UPI's decision to terminate Barr's employment at Los Angeles was premised upon its decision to reduce the staff.[1] Whether the dismissal was justified depended upon whether there was in fact a reduction in staff, and that was an issue of fact to be determined by the arbitrator. We cannot be as confident as the court below in finding that Article XIV, section 4 has "no possible relevance" to the question of arbitrability. But that is not necessary.

In order to escape arbitration we have to find that the exclusionary language of Article XIV, section 4 clearly, unambiguously and unmistakably precludes the arbitration of this dispute. It does not. There was not simply a change here in the composition of the staff, but a dismissal not mentioned or covered by Article XIV. Barr was dismissed allegedly because of a reduction of staff. This is a matter explicitly covered by

1. The union also maintained that Barr's discharge was improper under Article XXIV, section 1 of the agreement which provides that transfers of an employee between cities will be made only upon mutual consent of the employer and employee, and the employee shall not be penalized for refusing a transfer. This point was not reached by the arbitrator. We note, however, that a dismissal for refusal to transfer is hardly within the exemption from arbitrability under Article XIV, section 4.

Article XIII, section 2 of the Agreement and not at all clearly exempted under Article XIV, section 4. Whether there was a bona fide reduction of staff and therefore just cause for dismissal was an issue for the arbitrator.[2]

■ UPI's argument that the arbitrator's opinion manifests a clear failure to draw the essence of the award from the parties' agreement is not at all persuasive. This court has indicated that "[w]hen arbitrators explain their conclusions . . . in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result." *Andros Compania Maritima v. Marc Rich & Co., A.G.*, 579 F.2d 691, 704 (2d Cir. 1978). We have examined the arbitrator's report here. It is detailed, comprehensive and reasoned. We refuse to disturb it.

Accordingly, the judgment of the district court is affirmed.

**2.** See *International Association of Machinists and Aerospace Workers, AFL–CIO v. General Electric Co., supra.* In that case, a union contract contained a broad arbitration clause which provided, *inter alia*, that working hours would be subject to arbitration "except as to issues involving the Company's right to schedule shutdowns." The Company announced that production at one of its plants would be suspended. When the Union filed a petition to compel arbitration, the Company argued that the suspension involved a shutdown and that it was therefore excluded from arbitration. The Union maintained that the Company's action did not constitute a shutdown, but that even if there was a shutdown, the exclusionary clause quoted above made nonarbitrable only the Company's *right* to shut down, but not the consequences of the Company's action. This court found that the dispute was arbitrable since we could not say "with the required 'positive assurance' that the arbitration clause is not 'susceptible' of the Union's construction." 406 F.2d at 1048. In the instant case, a similar ambiguity arises; i. e., even if Barr's dismissal involved the employer's responsibility to determine the size and composition of its staff, does the clause in the Agreement prohibiting dismissal without just cause render the issue of Barr's dismissal arbitrable? See also *CBS Inc. v. International Photographers Of the Motion Picture Industries, supra*, 603 F.2d at 1062 63.